MORGAN & MORGAN
COMPLEX LITIGATION GROUP
Michael F. Ram (SBN 104805)
mram@forthepeople.com
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

JOHN A. YANCHUNIS*
jyanchunis@forthepeople.com
RONALD PODOLNY*
ronald.podolny@forthepeople.com
ANTONIO ARZOLA, JR.*
ararzola@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Phone: (813) 275-5272
Fax: (813) 222-4736

*Pro hac vice forthcoming.

Counsel for Plaintiff and the Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANE DOE**, individually and on behalf of all others similarly situated**,** | Case No. |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT** |
| **TEA DATING ADVICE, INC.,** | |
| Defendant. | PROPOSED CLASS ACTION |

1

CLASS ACTION COMPLAINT

Plaintiff Jane Doe, individually and on behalf of the Class defined below of similarly situated persons ("Plaintiff and Class Members"), alleges the following against Defendant Tea Dating Advice, Inc. ("Defendant" or "Tea"). The following allegations are based on Plaintiff's knowledge, investigations by Plaintiff's counsel, facts of public record, and information and belief:

## NATURE OF THE ACTION

1.      Plaintiff seeks to hold Defendant responsible for the injuries Tea  inflicted on Plaintiff and tens of thousands of others due to Defendant's egregiously inadequate data security, which resulted in the private information of Plaintiff and those similarly situated to be exposed to unauthorized third parties (the "Data Breach").

2.      The data that Tea exposed to the public is unique and highly sensitive. For one, the exposed data included personal identifying information ("PII"), like images of selfies, photo identification cards,  and images publicly viewable in Defendant's mobile application (collectively "Private Information").

3.      Plaintiff and Class Members provided this information to Tea with the understanding that Tea would keep that information private in accordance with both state and federal laws.

4.      On July 25, 2025, Tea detected unauthorized access to its systems and determined that a cybercriminal obtained unauthorized access to a dataset from prior to February 2024. As a result of the cyberattack, the cybercriminal stole the Private Information of tens of thousands of users of Tea's mobile application, including Plaintiff and Class Members.

CLASS ACTION COMPLAINT

5.      Tea disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to safeguard Private Information and by failing to take necessary steps to prevent unauthorized disclosure of that information. Tea's woefully inadequate data security measures made the Data Breach a foreseeable, and even likely, consequence of its negligence.

6.      Exacerbating the injuries to Plaintiff and Class Members, Tea failed to provide timely notice to Plaintiff and Class Members, depriving them of the chance to take speedy measures to protect themselves and mitigate harm.

7.      Today, the Private Information of Plaintiff and Class Members continue to be in jeopardy because of Defendant's actions and inactions described herein. Plaintiff and Class Members now suffer from a heightened and imminent risk of fraud and identity theft for years to come and now must constantly monitor their financial and other accounts for unauthorized activity.

8.      The PII exposed in the Data Breach can enable criminals to commit a litany of crimes. Criminals can open new financial accounts in Class Members' names, take out loans using Class Members' identities, use Class Members' names to obtain medical services, use Class Members' health information to craft phishing and other hacking attacks based on Class Members' individual health needs, use Class Members' identities to obtain government benefits, file fraudulent tax returns using Class Members' information, obtain driver's licenses in Class Members' names (but with another person's photograph), and give false information to police during an arrest.

CLASS ACTION COMPLAINT

9.      As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) anxiety, annoyance, and nuisance; (k) continued risk to their Private Information, which remains in Tea's possession and is subject to further breaches so long as Tea fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information; and (l) disgorgement damages associated with Tea's maintenance and use of Plaintiff's data for its benefit and profit.

10.      Through this action, Plaintiff seeks to remedy these injuries on behalf of herself and all similarly situated individuals whose Private Information was exposed and compromised in the Data Breach.

11.      Plaintiff brings this action against Tea and asserts claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, breach of fiduciary duty, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

12.      This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 putative class

4

CLASS ACTION COMPLAINT

members and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. And minimal diversity is established because Plaintiff (and many members of the Nationwide Class) are citizens of states different than Defendant.

13.    This Court has general personal jurisdiction over Defendant because Defendant's principal place of business and headquarters are in California. Defendant also regularly conducts substantial business in California.

14.    Venue is proper in this District under 28 U.S.C. §§ 1391(a)(2), 1391(b)(2), and 1391(c)(2) because substantial part of the events giving rise to the claims emanated from activities within this District, and Defendant conducts substantial business in this District.

## PARTIES

15.    Plaintiff Jane Doe is a natural person, resident, and citizen of North Carolina.

16.    Defendant Tea Data Advice, Inc. is a private corporation with its principal place of business located at 201 Spear Street, Suite 1100, San Francisco, CA 94105.

## FACTUAL ALLEGATIONS

***Defendant Collected and Stored the Private Information of Plaintiff and Class Members***

17.    Tea Dating Advice, Inc. is a California-based corporation, describing itself as "the first-ever dating safety platform for women."[1]

---

[1] *About*, Tea Dating Advice, https://www.teaforwomen.com/about (last accessed July 30, 2025)

CLASS ACTION COMPLAINT

18.     Through Tea's mobile application, women looking to date can "find verified green flag men," "run background checks," "identify potential catfish," "verify [that a man is] not a sex offender," and "check for a criminal history[.]"[2]

19.     Tea advertises that over 4.6 million women are users of its application, which is downloadable on the Apple App Store and the Google Play store.[3]



A heat map taken from Tea's website showing the distribution of Tea users across the United States.[4]

20.     Tea promotes its dating safety platform as "the safest space to spill tea" and is "built on trust; screenshots are blocked and all members are verified as women[.]"[5]

21.     Plaintiff and Class Members—individuals who created accounts on Tea's mobile dating safety application—provided their Private Information to Tea as a requirement to obtain products and services from Defendant.

---

[2] *Home Page*, Tea Dating Advice, https://www.teaforwomen.com/ (last accessed July 30, 2025)
[3] *Id.*
[4] *About*, Tea Dating Advice, https://www.teaforwomen.com/about (last accessed July 30, 2025)
[5] *Id.*

CLASS ACTION COMPLAINT

22.    Tea collects Private Information from Plaintiff and Class Members such as their images of selfies, photo identification cards, and images uploaded onto the app in the ordinary course of business. Upon information and belief, this Private Information is then stored on Defendant's systems.

23.    Because of the highly sensitive and personal nature of the information that Tea acquires and stores, Tea knew or reasonably should have known that it must comply with industry standards related to data security and all federal and state laws protecting Private Information and provide adequate notice if Private Information is disclosed without proper authorization.

24.    Plaintiff and Class Members provided their Private Information to Tea as a condition of receiving products and services from Tea, but in doing so, expected Tea to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***The Data Breach***

25.    On July 25, 2025, Tea posted the following notice on its website, notifying the public of the Data Breach:

> At 6:44 AM PST on 7/25, we identified unauthorized access to our systems and immediately launched a full investigation with assistance from external cybersecurity experts to understand the scope and impact of the incident. Here's what we know at this time:

> A legacy data storage system was compromised, resulting in unauthorized access to a dataset from prior to February 2024. This dataset includes approximately 72,000 images, including approximately 13,000 selfies and photo identification submitted by users during account verification and approximately 59,000 images publicly viewable in the app from posts, comments and direct messages.

7

CLASS ACTION COMPLAINT

No email addresses or phone numbers were accessed. Only users who signed up before February 2024 were affected.

This information was stored in accordance with law enforcement requirements related to cyber-bullying investigations.

We are working around the clock with internal security teams and third-party experts to secure our systems. We are currently working to determine the full nature and scope of information involved in the incident.

We will continue to share updates as more information becomes available. In the meantime, if you have questions or concerns, please contact our support team at support@teaforwomen.com.

Your data privacy is of the utmost importance to us. We are taking all necessary measures to strengthen our security posture and ensure that no further data is exposed. Thank you for your trust—and for your patience as we address this with the urgency it deserves.[6]

26.    On or about July 28, 2025, Tea provided the following update on its website, addressing a security vulnerability targeting the Tea app's "direct messaging" feature:

Sharing an update on the cyber incident that took place last week. As part of our ongoing investigation, we have recently learned that some direct messages (DMs) were accessed as part of the initial incident. For this reason our DM functionality is down.

To address the issue and out of an abundance of caution, we have taken the affected system offline altogether. At this time, we have found no evidence of access to other parts of our environment.

---

[6] *Update Regarding Cybersecurity Incident*, Tea Dating Advice (July 25, 2025), https://www.teaforwomen.com/cyberincident (last accessed July 30, 2025)

CLASS ACTION COMPLAINT

Please know that we're committed to keeping you informed as quickly as possible. That said, because this is an active investigation involving external cybersecurity experts and the FBI, there are limits to what we can share—and when. We'll continue to provide updates as soon as we have confirmed information and are able to do so responsibly.

Our team remains fully engaged in strengthening the Tea App's security, and we look forward to sharing more about those enhancements soon. In the meantime, we are working to identify any users whose personal information was involved and will be offering free identity protection services to those individuals.[7]

27.    This attack on the Tea app's direct messaging feature—which disclosed over one million messages—made "it [] possible for hackers to access messages between users discussing abortions, cheating partners, and phone numbers they sent to one another."[8]

28.    Upon information and belief, Plaintiff's and Class Members' affected Private Information at the time of the Data Breach was accessible, unencrypted, unprotected, and vulnerable for acquisition and/or exfiltration by unauthorized individuals.

29.    Upon information and belief, Tea was a target due to its status as an entity that collects, creates, and maintains Private Information.

30.    Defendant's online notices and updates about the Data Breach give no details to Plaintiff or Class Members regarding the manner and means of how their Private Information was disclosed and leaves Plaintiff and Class Members wondering how they can protect themselves.

---

[7] *Id.*

[8] Emanuel Maiberg, Joseph Cox, *A Second Tea Breach Reveals Users' DMs About Abortions and Cheating*, 404Media (July 28, 2025), https://www.404media.co/a-second-tea-breach-reveals-users-dms-about-abortions-and-cheating/ (last accessed July 30, 2025)

CLASS ACTION COMPLAINT

31.     Time is of the essence when highly sensitive Private Information is subject to unauthorized access and/or acquisition. The disclosed, accessed, and/or acquired Private Information of Plaintiff and Class Members is now likely available on the Dark Web. Hackers can access and then offer for sale the unencrypted, unredacted Private Information to criminals.

32.     Plaintiff and Class Members are now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from the possible publication of their Private Information, especially their Social Security numbers and sensitive medical information, onto the Dark Web. Plaintiff and Class Members face a lifetime risk of identity theft, which is heightened here by unauthorized access, disclosure, and/or activity by cybercriminals on computer systems containing hundreds of thousands of Social Security numbers and/or specific, sensitive medical information.

33.     Tea largely put the burden on Plaintiff and Class Members to take measures to protect themselves from identity theft and fraud.

34.     As another element of damages, Plaintiff and Class Members seek a sum of money sufficient to provide to Plaintiff and Class Members identity theft protection services for their respective lifetimes.

35.     Plaintiff and the Class Members remain in the dark regarding exactly what data was stolen, the particular method of disclosure, the results of any investigations, and what steps are being taken, if any, to secure their Private Information going forward. Plaintiff and Class Members are left to speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

CLASS ACTION COMPLAINT

36.     Tea could have prevented the Data Breach by properly securing and encrypting and/or more securely encrypting its servers and systems, generally, as well as Plaintiff's and Class Members' Private Information.

37.     Defendant's negligence in safeguarding Plaintiff's and Class Members' PII was exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

38.     Time is a compensable and valuable resource in the United States. According to the U.S. Bureau of Labor Statistics, 55.6% of U.S.-based workers are compensated on an hourly basis, while the other 44.4% are salaried.[9]

39.     According to the American Time Use Survey, American adults have between 4 to 6 hours of "leisure time" outside of work per day;[10] examples of leisure time include partaking in sports, exercise and recreation; socializing and communicating; watching TV; reading; thinking/relaxing; playing games and computer use for leisure; and other leisure activities.[11] Usually, this time can be spent at the option and choice of the consumer, however, having been notified of the Data Breach, consumers now have to spend hours of their leisure time self-

---

[9] *Characteristics of minimum wage workers, 2022*, U.S. Bureau of Labor Statistics (Aug. 2023), https://www.bls.gov/opub/reports/minimum-wage/2022/home.htm (last accessed on Aug. 6, 2024).

[10] *Americans have no idea how to use their free time*, Business Insider (Mar. 26, 2024), https://www.businessinsider.com/americans-free-time-leisure-dont-use-television-2024-3 (last accessed on Aug. 6, 2024).

[11] *Table 11A. Time spent in leisure and sports activities for the civilian population by selected characteristics, averages per day, 2022 annual averages*, U.S. Bureau of Labor Statistics (June 22, 2023), https://www.bls.gov/news.release/atus.t11A.htm (last accessed on Aug. 6, 2024).

11

CLASS ACTION COMPLAINT

monitoring their accounts, communicating with financial institutions and government entities, and placing other prophylactic measures in place to attempt to protect themselves.

40.    Plaintiff and Class Members are deprived of the choice as to how to spend their valuable free hours and therefore seek renumeration for the loss of valuable time as another element of damages.

***The Value of PII***

41.    In April 2020, ZDNet reported in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year", that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for complaints as revenge against those who refuse to pay."[12]

42.    In October 2023, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "malicious actors have adjusted their ransomware tactics to be more destructive and impactful and have also exfiltrated victim data and pressured victims to pay by threatening to release the stolen data."[13]

43.    Stolen PII is often trafficked on the dark web. Law enforcement has difficulty policing the dark web due to this encryption, which allows users and criminals to conceal identities and online activity.

_____

[12] https://www.zdnet.com/article/ransomeware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited Jan. 17, 2024).
[13] *See StopRansomware Guide*, U.S. Cybersec. and Infrastructure Sec. Agency (Oct. 2023), https://www.cisa.gov/sites/default/files/2023-10/StopRansomware-Guide-508C-v3_1.pdf.

CLASS ACTION COMPLAINT

44.    Malicious actors can use stolen personal information to, *inter alia*, create synthetic identities (which are harder for authorities to detect), execute credible phishing attacks, and sell the personal information on underground markets in the dark web.[14]

45.    Another example is when the U.S. Department of Justice announced its seizure of RaidForums in 2022. RaidForums was an online marketplace popular for cybercriminals to purchase and sell hacked data belonging to millions of individuals around the world.[15] "One of the key challenges of protecting PII online is its pervasiveness. As data breaches in the news continue to show, PII about employees, customers and the public is housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[16]

46.    The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. According to Prey, a company that develops device tracking and recovery software, stolen PII and can be worth up to $2,000.00 depending on the type of information obtained.[17]

---

[14] *What Data Do Cybercriminals Steal? (How To Protect Yours)*, Identity Guard (Feb. 14, 2024), https://www.identityguard.com/news/what-information-do-cyber-criminals-steal.
[15] *United States Leads Seizure of One of the World's Largest Hacker Forums and Arrests Administrator*, U.S. Dept. of Justice (Apr. 12, 2022), https://www.justice.gov/opa/pr/united-states-leads-seizure-one-world-s-largest-hacker-forums-and-arrests-administrator.
[16] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/.
[17] Juan Hernandez, *The Lifecycle of Stolen Credentials on the Dark Web*, Prey (Feb. 26, 2024), https://preyproject.com/blog/lifecycle-stolen-credentials-dark-web.

CLASS ACTION COMPLAINT

47.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. Such fraudulent uses include opening fraudulent credit cards and bank accounts, filing or collecting tax returns, accessing government benefits, applying for loans, and receiving healthcare. "If not spotted and resolved, these types of identity theft can rack up financial debt and do extensive damage to a person's credit, making things like obtaining a loan to buy a car or house difficult or even impossible."[18]

48.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

49.     Even then, a new Social Security number may not be effective. "When issuing a new SSN, the Social Security Administration (SSA) links your old number to your new one so you'll still be associated with all wages earned."[19]

50.     Because of this, the information compromised in the Data Breach here is significantly more harmful to lose than other types of data because the information compromised

---

[18] *What to do if someone has your Social Security number*, AllState (Jan. 24, 2024), https://www.allstateidentityprotection.com/content-hub/stolen-social-security-number.
[19] *What Happens if I Change My Social Security Number*, LendingTree (Mar. 15, 2023), https://www.lendingtree.com/credit-repair/credit-score-after-getting-a-new-social-security-number/.

14

CLASS ACTION COMPLAINT

in this Data Breach is difficult, if not impossible, to change.

51.    The PII compromised in the Data Breach also demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10 times on the black market."[20]

52.    Once PII is sold, it is often used to gain access to various areas of the victim's digital life, including bank accounts, social media, credit card, and tax details. This can lead to additional PII being harvested from the victim, as well as PII from family, friends and colleagues of the original victim.

53.    According to the FBI's Internet Crime Complaint Center (IC3) 2023 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $12.5 billion in losses to individuals and business victims.[21]

54.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

_____

[20] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*:
https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells- for-10x- price-of-stolen-credit-card-numbers.html (last visited Jan. 17, 2024).
[21] *2023 Internet Crime Report*, Fed. Bureau of Investig. (2023),
https://www.ic3.gov/Media/PDF/AnnualReport/2023_IC3Report.pdf (last accessed Apr. 11, 2024).

15

CLASS ACTION COMPLAINT

55.     Data breaches facilitate identity theft as hackers obtain consumers' PII and thereafter use it to siphon money from current accounts, open new accounts in the names of their victims, or sell consumers' PII to others who do the same.

56.     For example, the United States Government Accountability Office noted in a June 2007 report on data breaches (the "GAO Report") that criminals use PII to open financial accounts, receive government benefits, and make purchases and secure credit in a victim's name.[22] The GAO Report further notes that this type of identity fraud is the most harmful because it may take some time for a victim to become aware of the fraud, and can adversely impact the victim's credit rating in the meantime. The GAO Report also states that identity theft victims will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."[23]

57.     The exposure of Plaintiff's and Class Members' PII to cybercriminals will continue to cause substantial risk of future harm (including identity theft) that is continuing and imminent in light of the many different avenues of fraud and identity theft utilized by third-party cybercriminals to profit off of this highly sensitive information.

***Defendant Failed to Comply with the FTC Act and Failed to Observe Reasonable and Adequate Data Security Measures***

---

[22] *See* Government Accountability Office, *Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (June 2007), https://www.gao.gov/assets/gao- 07-737.pdf (last visited Jan. 17, 2024).
[23] *Id*.

16

CLASS ACTION COMPLAINT

58.     The Federal Trade Commission ("FTC") has issued several guides for businesses, highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[24]

59.     Under the FTC's 2016 *Protecting Personal Information: Guide for Business* publication, the FTC notes that businesses should safeguard the personal customer information they retain; properly dispose of unnecessary personal information; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to rectify security issues.[25]

60.     The guidelines also suggest that businesses use an intrusion detection system to expose a breach as soon as it happens, monitor all incoming traffic for activity indicating someone is trying to hack the system, watch for large amounts of data being siphoned from the system, and have a response plan in the event of a breach.

61.     The FTC advises companies to not keep information for periods of time longer than needed to authorize a transaction, restrict access to private information, mandate complex passwords to be used on networks, utilize industry-standard methods for security, monitor for

---

[24] *Start with Security: A Guide for Business*, Fed. Trade Comm'n (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final_0.pdf.
[25] *Protecting Personal Information: A Guide for Business*, FTC (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited April 17, 2024).

17

CLASS ACTION COMPLAINT

suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.[26]

62.     The FTC has brought enforcement actions against companies for failing to adequately and reasonably protect consumer data, treating the failure to do so as an unfair act or practice barred by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders originating from these actions further elucidate the measures businesses must take to satisfy their data security obligations.

63.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

64.     Plaintiff and Class Members gave their PII to Defendant with the reasonable expectation and understanding that Defendant would comply with its duty to keep such information confidential and secure from unauthorized access.

65.     Defendant Tea states in its "Privacy Policy" the following representations about the supposed privacy and security of Plaintiff's and Class Members' Private Information:

> Tea Dating Advice ("Tea Dating Advice," "Company," "We," "Our") respects your privacy and is committed to protecting it through our compliance with this policy.  This document details the types of information we may collect or that you may provide when you access, use or register with Tea Dating Advice's website and mobile application (collectively "Services") and our practices for using, maintaining, protecting and disclosing that information. Please read this carefully to understand our policies and practices regarding your information and how we

---

[26] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final_0.pdf.

CLASS ACTION COMPLAINT

will treat it. By using or registering with our Services, you agree to this Privacy Policy. Your continued use of our Services after we make changes is deemed to be acceptance of those changes, so please check the policy periodically for updates as it may change from time to time.

[…]

**Information          You          Provide          to          Us**
When you use or register with the Services, we may ask you to provide information by which you may be personally identified, such as your email address, date of birth, location, photograph, ID photograph, and any other identifier by which you may be contacted or identified online or offline ("Personal Information"). This information                                                                        includes:
• Information that you provide by filling in forms in the Services. This includes information provided at the time of registering to use the Services, using the Services                       and                       requesting                       help.
• Details of transactions you carry out through the Services and of the fulfillment of your orders. You may be required to provide financial information before placing an        order        through        the        Services        or        receiving        payment.
• Records and copies of your correspondence (including e-mail addresses and phone numbers), if you contact us. We may also ask you for information when you report        a        problem        with        the        Services.
• Your responses to surveys that we might ask you to complete for research and development purposes.

[…]

**Security          of          Your          Personal          Information**
The security of your Personal Information is important to us. When you enter sensitive information (such as credit card number) on our Services, we encrypt that information using secure socket layer technology (SSL). Tea Dating Advice takes reasonable security measures to protect your Personal Information to prevent loss, misuse, unauthorized access, disclosure, alteration, and destruction. Please be aware, however, that despite our efforts, no security measures are impenetrable. If you use a password on the Services, you are responsible for keeping it confidential. Do not share it with any other person. If you believe your password has been misused, please notify us immediately.[27]

---

[27] *Privacy Policy*, Tea Dating Advice (Dec. 28, 2022), https://www.teaforwomen.com/privacy (last accessed July 30, 2025).

CLASS ACTION COMPLAINT

66.     Defendant has been on notice for years that Plaintiff's and Class Members' PII was a target for bad actors because of, among other motives, the high value of the PII created, collected, and maintained by Defendant.

67.     Despite such awareness, Defendant failed to impose and maintain reasonable and appropriate data security controls to protect Plaintiff's and Class Members' PII from unauthorized access that Defendant should have anticipated and guarded against.

68.     Defendant was fully aware of its obligation to protect the PII of its customers because of its collection, storage, and maintenance of PII. Defendant was also aware of the significant consequences that would ensue if it failed to do so because Defendant collected, stored, and maintained sensitive private information from millions of individuals and knew that this information, if hacked, would result in injury to Plaintiff and Class Members.

69.     Despite understanding the consequences of insufficient data security, Defendant failed to adequately protect Plaintiff's and Class Members' PII, permitting bad actors to access and misuse it.

***Defendant Failed to Comply with Industry Standards***

70.     Various cybersecurity industry best practices have been published and should be consulted as a go-to resource when developing an organization's cybersecurity standards. The Center for Internet Security ("CIS") promulgated its Critical Security Controls, which identify the most commonplace and essential cyber-attacks that affect businesses every day and proposes

20

CLASS ACTION COMPLAINT

solutions to defend against those cyber-attacks.[28] All organizations collecting and handling PII, such as Defendant, are strongly encouraged to follow these controls.

71.    Further, the CIS Benchmarks are the overwhelming option of choice for auditors worldwide when advising organizations on the adoption of a secure build standard for any governance and security initiative, including PCI DSS, HIPAA, NIST 800-53, SOX, FISMA, ISO/IEC 27002, Graham Leach Bliley and ITIL.[29]

72.    Several best practices have been identified that a minimum should be implemented by institutions like Defendant, including but not limited to securely configuring business software, managing access controls and vulnerabilities to networks, systems, and software, maintaining network infrastructure, defending networks, adopting data encryption while data is both in transit and at rest, and securing application software.[30]

73.    Other best practices have been identified that a minimum should be implemented by institutions like Defendant, including but not limited to ensuring that PII is only shared with third parties when reasonably necessary and that those vendors have appropriate cybersecurity systems and protocols in place.[31]

---

[28] Center for Internet Security, *Critical Security Controls*, at 1 (May 2021), available at https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf (last visited Jan. 17, 2024).
[29] *See CIS Benchmarks FAQ*, Center for Internet Security, https://www.cisecurity.org/cis-benchmarks/cis-benchmarks-faq/ (last visited Jan. 17, 2024).
[30] *See* Center for Internet Security, *Critical Security Controls* (May 2021), available at https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf (last visited Jan. 17, 2024).
[31] *See id*.

CLASS ACTION COMPLAINT

74.    Defendant failed to follow these and other industry standards to adequately protect the PII of Plaintiff and Class Members.

***The Data Breach Caused Harm and Will Result in Additional Fraud***

75.    Without detailed disclosure to the victims of the Data Breach, individuals whose PII was compromised by the Data Breach, including Plaintiff and Class Members, were unknowingly and unwittingly exposed to continued misuse and ongoing risk of misuse of their PII for months without being able to take available precautions to prevent imminent harm.

76.    The ramifications of Defendant's failure to secure Plaintiff's and Class Members' data are severe.

77.    Victims of data breaches are much more likely to become victims of identity theft and other types of fraudulent schemes. This conclusion is based on an analysis of four years of data that correlated each year's data breach victims with those who also reported being victims of identity fraud.

78.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[32]  The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[33]

79.    Identity thieves can use PII, such as that of Plaintiff and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance,

_____

[32] 17 C.F.R § 248.201 (2013).
[33] *Id.*

22

CLASS ACTION COMPLAINT

identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

80.    As demonstrated herein, these and other instances of fraudulent misuse of the compromised PII have already occurred and are likely to continue.

81.    Javelin Strategy and Research reports that identity thieves have stolen $43 billion in 2022.[34]

82.    Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. According to Experian, a credit monitoring company, "it takes an average of six months and roughly 200 hours of work to recover your identity after it's been compromised."[35]

83.    There may be a time lag between when harm occurs versus when it is discovered, and also between when private information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may

---

[34] *See Identity Fraud Losses Totaled $43 Billion in 2022, Affecting 40 Million U.S. Adults*, Javelin (Mar. 28, 2023), https://javelinstrategy.com/press-release/identity-fraud-losses-totaled-43-billion-2022-affecting-40-million-us-adults .

[35] Gayle Soto, *The Unexpected Costs of Identity Theft*, Experian (Sept. 30, 2020), https://www.experian.com/blogs/ask-experian/what-are-unexpected-costs-of-identity-theft/

CLASS ACTION COMPLAINT

continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[36]

84.    Thus, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

***Plaintiff's Experience with the Data Breach***

85.    Plaintiff Jane Doe, a user of Tea's mobile app since 2023, provided her PII to Defendant—including a 'selfie' image of herself and her photo identification, all submitted by her onto the Tea mobile app—and upon information and belief, that PII was stored and maintained by Defendant.

86.    Shortly after Tea notified the public of the Data Breach, social media posts appeared on several social media platforms—including Facebook, Instagram, and X (Twitter)—publicly displaying Plaintiff's selfie photo uploaded by her onto Tea's platform to create a Tea account.

87.    In these social media posts, the authors insulted Plaintiff, going as far as to mock her physical appearance as reflected by her leaked photo that she entrusted to Tea.

88.    The leaked social media posts were then reported on in the press, in a manner that indirectly revealed Plaintiff's identity, causing Plaintiff further anguish and embarrassment.

89.    Plaintiff values her privacy and makes every effort to keep her personal information private.

---

[36] GAO, *Report to Congressional Requesters*, at 29 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (last visited Jan. 17, 2024).

CLASS ACTION COMPLAINT

90.     Plaintiff is now forced to live with the anxiety that Plaintiff's PII is being disclosed to the entire world, thereby subjecting Plaintiff to embarrassment and depriving Plaintiff of any right to privacy whatsoever.

91.     As a result of the Data Breach, Plaintiff has had to spend over five (5) hours dealing with the consequences of the Data Breach. This time and effort spent by Plaintiff consists of: monitoring accounts to detect suspicious and fraudulent activity to mitigate against potential harm; uncovering social media posts disparaging Plaintiff based on her photo that she entrusted to Tea; and researching the potential consequences of the Data Breach.

92.     Plaintiff remains at a substantial and imminent risk of future harm given the highly-sensitive nature of the information stolen. Plaintiff faces a substantial risk of out-of-pocket fraud losses, such as loans opened in Plaintiff's name, medical services billed in Plaintiff's name, tax return fraud, utility bills opened in Plaintiff's name, credit card fraud, and similar identity theft.

***Plaintiff and Class Members Suffered Damages***

93.     The Data Breach was a direct and proximate result of Defendant's failure to properly safeguard and protect Plaintiff's and Class Members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Defendant's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

CLASS ACTION COMPLAINT

94.    Had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it would have prevented intrusion into its information storage and security systems and, ultimately, the theft of the PII of tens of thousands of individuals.

95.    As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have already been harmed by the fraudulent misuse of their PII, and have been placed at an imminent, immediate, and continuing increased risk of additional harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate both the actual and potential impact of the Data Breach on their lives. Such mitigatory actions include, *inter alia*, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, sorting through dozens of phishing and spam email, text, and phone communications, and filing police reports. This time has been lost forever and cannot be recaptured.

96.    Defendant's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

      a.    theft and misuse of their personal information;

      b.    the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and misused

CLASS ACTION COMPLAINT

via the sale of Plaintiff's and Class Members' information on the Internet's black market;

c.  the untimely and inadequate notification of the Data Breach;

d.  the improper disclosure of their PII;

e.  loss of privacy;

f.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

g.  ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market; and,

h.  the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

97.  While Plaintiff's and Class Members' PII has been stolen, Defendant continues to hold Plaintiff's and Class Members' PII. Particularly because Defendant has demonstrated an inability to prevent a breach or stop it from continuing even after being detected, Plaintiff and Class Members have an undeniable interest in ensuring that their PII is secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

## **CLASS ACTION ALLEGATIONS**

CLASS ACTION COMPLAINT

98.    Plaintiff brings this class action individually and on behalf of all similarly situated persons under Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) of the following Nationwide Class (the "Class"):

> All persons in the United States whose Private Information was compromised in the Defendant's Data Breach that occurred on July 25, 2025.

99.    The Class defined above is readily ascertainable from information in Defendant's possession. Thus, such identification of Class Members will be reliable and administratively feasible.

100.    Excluded from the Class are: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or their parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; (6) members of the jury; and (7) the legal representatives, successors, and assigns of any such excluded persons.

101.    Plaintiff reserves the right to amend or modify the Class definitions as this case progresses.

102.    Plaintiff satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

103.    **Numerosity**. Class Members are numerous such that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on

CLASS ACTION COMPLAINT

information and belief, the Class consists of over 4.6 million users of Defendant's mobile app whose PII were compromised by Defendant's Data Breach.

104.    **Commonality**. There are many questions of law and fact common to the Class. And these common questions predominate over any individualized questions of individual Class Members. These common questions of law and fact include, without limitation:

a.    If Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

b.    If Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    If Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.    If Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.    If Defendant owed a duty to Class Members to safeguard their PII;

f.    If Defendant breached its duty to Class Members to safeguard their PII ;

g.    If Defendant knew or should have known that its data security systems and monitoring processes were deficient;

h.    If Defendant should have discovered the Data Breach earlier;

i.    If Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

CLASS ACTION COMPLAINT

j.     If Defendant's delay in informing Plaintiff and Class Members of the Data Breach was unreasonable;

k.     If Defendant's method of informing Plaintiff and Class Members of the Data Breach was unreasonable;

l.     If Defendant's conduct was negligent;

m.     If Plaintiff and Class Members were injured as a proximate cause or result of the Data Breach;

n.     If Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

o.     If Defendant breached implied contracts with Plaintiff and Class Members;

p.     If Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

q.     If Defendant failed to provide notice of the Data Breach in a timely manner, and;

r.     If Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

105.    **Typicality**. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach. Moreover, Plaintiff and Class Members were subjected to Defendant's uniformly illegal and impermissible conduct.

106.    **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's counsel is competent and experienced

30

CLASS ACTION COMPLAINT

in litigating complex class actions. Plaintiff has no interests that conflict with, or are antagonistic to, those of the Class.

107.    **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that Plaintiff's and Class Members' data was stored on the same computer system and unlawfully exposed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

108.    **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources, the parties' resources, and protects the rights of each Class Member.

109.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

CLASS ACTION COMPLAINT

110. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

111. Likewise, particular issues under Federal Rule of Civil Procedure 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include those set forth above.

112. Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

113. Plaintiff re-alleges and incorporates by reference paragraphs 1 to 112 of the Complaint as if fully set forth herein.

114. Tea required Plaintiff and Class Members to provide Defendant with PII to receive Defendant's products and services.

115. By collecting and storing this data in its computer system and network, and sharing it and using it for commercial gain, Tea owed a duty of care to use reasonable means to secure and safeguard their computer system—and Plaintiff's and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes so it could detect a breach of its security

32

CLASS ACTION COMPLAINT

systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

116. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would at some point try to access Defendant's databases of PII.

117. After all, PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members. Thus, Defendant knew, or should have known, the importance of exercising reasonable care in handling the PII entrusted to it.

118. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII.

119. Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and Class Members, which is recognized by laws and regulations including but not limited to the FTCA, state statutory law, and common law. Defendant was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

120. Defendant failed to take appropriate measures to protect the PII of Plaintiff and the Class. Any purported safeguards that Defendant had in place were wholly inadequate.

121. Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class Members' PII by failing to adopt, implement, and maintain

CLASS ACTION COMPLAINT

adequate security measures to safeguard that information, despite known data breaches across several industries, and allowing unauthorized access to Plaintiff's and the other Class Members' PII.

122.    The failure of Defendant to comply with industry and federal regulations evinces Defendant's negligence in failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII.

123.    But for Defendant's wrongful and negligent breach of their duties to Plaintiff and the Class, PII would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the PII of Plaintiff and the Class and all resulting damages.

124.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class Members' PII. Defendant knew or should have known that their systems and technologies for processing and securing the PII of Plaintiff and the Class had security vulnerabilities.

125.    As a result of this misconduct by Defendant, the PII and other sensitive information of Plaintiff and the Classes was compromised, placing them at a greater risk of identity theft and their PII being disclosed to third parties without the consent of Plaintiff and the Class.

126.    As a direct and proximate result of Tea's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised PII; (ii) invasion of privacy; (iii) lost or diminished value of PII; (iv) lost time and

CLASS ACTION COMPLAINT

opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Tea's possession and is subject to further unauthorized disclosures so long as Tea fails to undertake appropriate and adequate measures to protect the Private Information; (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised PII for the rest of their lives; (ix) the present value of ongoing credit monitoring and identity defense services necessitated by Tea's data breach; (x) the value of the unauthorized access to their PII permitted by Defendant; and (xi) any nominal damages that may be awarded.

127.   As a direct and proximate result of Tea's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses including nominal damages.

128.   Tea's negligent conduct is ongoing, in that it still possesses Plaintiff's and Class Members' PII in an unsafe and insecure manner.

129.   Plaintiff and Class Members are entitled to injunctive relief requiring Tea to: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## **COUNT II**

35

CLASS ACTION COMPLAINT

**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

130.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 112 of the Complaint as if fully set forth herein.

131.    Tea had duties arising under the FTCA to protect Plaintiff's and Class Members' PII.

132.    Tea breached its duties, pursuant to the FTCA and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII. The specific negligent acts and omissions committed by Tea include, but are not limited to, the following: (i) failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII; (ii) failing to adequately monitor the security of their networks and systems; (iii) allowing unauthorized access to Class Members' PII; (iv) failing to detect in a timely manner that Class Members' PII had been compromised; (v) failing to remove former consumers' PII Defendant was no longer required to retain pursuant to regulations; and (vi) failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

133.    Tea's violation of Section 5 of the FTCA (and similar state statutes) constitutes negligence *per se*.

134.    Plaintiff and Class Members are consumers within the class of persons that Section 5 of the FTCA were intended to protect.

135.    The harm that has occurred is the type of harm the FTCA were intended to guard against.

36

CLASS ACTION COMPLAINT

136.    The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

137.    Tea breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

138.    Plaintiff and Class Members were foreseeable victims of Tea's violations of the FTCA. Tea knew or should have known that its failure to implement reasonable data security measures to protect and safeguard Plaintiff's and Class Members' PII would cause damage to Plaintiff and the Class.

139.    As a direct and proximate result of Tea's negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised PII; (ii) invasion of privacy; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Tea's possession and is subject to further unauthorized disclosures so long as Tea fails to undertake appropriate and adequate measures to protect the PII.

140.    As a direct and proximate result of Tea's negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not

CLASS ACTION COMPLAINT

limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

141.    Finally, as a direct and proximate result of Tea's negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Tea's possession and is subject to further unauthorized disclosures so long as Tea fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

**<u>COUNT III</u>**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

142.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 112 of the Complaint as if fully set forth herein.

143.    Plaintiff and Class Members were required to provide their PII to Defendant as a condition of receiving Defendant's products and services.

144.    Plaintiff and Class Members entrusted their PII to Defendant. In doing so, Plaintiff and the class entered into implied contracts with Defendant by which it agreed to safeguard and protect such information to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the class if their data had been breached and compromised or stolen.

145.    In entering into the implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards, and that Defendant would thoroughly vet and select vendors that adequately protect PII.

146.    Implicit in the agreement between Plaintiff and Class Members and Defendant was Defendant's obligation to: (a) take reasonable steps to safeguard that PII, including through proper

38

CLASS ACTION COMPLAINT

vetting of third party vendors to whom PII is provided; (b) prevent unauthorized disclosure of the PII; (c) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII; (d) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses; and (e) retain or allow third parties to retain PII only under conditions that kept such information secure and confidential.

147.    The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant on the other, is demonstrated by their conduct and course of dealing. Defendant required Plaintiff and Class Members to provide their PII as a condition of receiving Defendant's products and services. Plaintiff and Class Members accepted the offers and provided their PII.

148.    In accepting the PII, Defendant understood and agreed that it was required to reasonably safeguard and otherwise ensure protection of the PII from unauthorized access or disclosure.

149.    Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of the implied contract between them and Defendant that Defendant would keep and require the third-party vendors it selects to house PII to keep, their PII reasonably secure.

150.    Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of their implied promise to monitor and ensure that the PII entrusted to it would remain protected by reasonable data security measures and remain confidential, either in the hands of Defendant or one of its vendors.

151.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant by providing their PII at Defendant's request.

CLASS ACTION COMPLAINT

152.    Defendant breached the implied contracts made with Plaintiff and the Class by failing to safeguard and protect their PII, by failing to delete the PII of Plaintiff and the Class, and by failing to provide accurate notice to them that their PII was compromised as a result of the Data Breach.

153.    As a direct and proximate result of Defendant's breach of these implied contracts, Plaintiff and Class Members sustained damages, as alleged herein, including the loss of the benefit of the bargain.

154.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

155.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data monitoring procedures; (ii) submit to future annual audits of its IT systems and monitoring procedures; (iii) bolster its IT security measures; and (iv) immediately provide or continue providing adequate credit monitoring to all Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

156.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 112 of the Complaint as if fully set forth herein.

157.    Plaintiff and Class Members conferred a benefit on Defendant by entrusting their PII to Defendant from which it derived profits.

158.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant

40

CLASS ACTION COMPLAINT

instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide adequate security.

159.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

160.    Defendant acquired the PII through inequitable means in that Defendant failed to disclose the inadequate security practices, previously alleged, and failed to maintain adequate data security.

161.    If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to disclose their data to Defendant.

162.    Plaintiff and Class Members have no adequate remedy at law.

163.    As a direct and direct an proximate result of Tea's conduct, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised PII; (ii) invasion of privacy; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; (vii) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Tea's possession and is subject to further unauthorized disclosures or further entrustment to inadequate

CLASS ACTION COMPLAINT

third party vendors so long as Tea fails to undertake appropriate and adequate measures to protect the PII; (vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised PII for the rest of their lives; (ix) the present value of ongoing credit monitoring and identity defense services necessitated by Tea's data breach; (x) the value of the unauthorized access to their PII permitted by Defendant; and (xi) any nominal damages that may be awarded.

164.    Plaintiff and Class Members are entitled to restitution and/or damages from Tea and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Tea from its wrongful conduct, as well as return of their sensitive PII and/or confirmation that it is secure. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

165.    Plaintiff and Class Members may not have an adequate remedy at law against Tea, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

### COUNT V
### BREACH OF FIDUCIARY DUTY
### (On Behalf of Plaintiff and the Class)

166.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 112 of the Complaint as if fully set forth herein.

167.    Defendant became the guardian of Plaintiff's and Class Members' PII. Defendant became a fiduciary, created by its undertaking and guardianship of Plaintiff's and Class Members' PII, to act primarily for their benefit. This duty included the obligation to safeguard Plaintiff's and Class Members' PII and to timely detect and notify Plaintiff and Class Members in the event

42

CLASS ACTION COMPLAINT

of a data breach.

168.    Defendant knowingly undertook the responsibility and duties related to the possession of Plaintiff's and Class Members' PII for the benefit of Plaintiff and Class Members in order to provide Defendant's products and services to Plaintiff and Class Members.

169.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members within the scope of its relationship with them. Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to properly protect PII. Defendant further breached its fiduciary duties by failing to timely detect the Data Breach and notify and/or warn Plaintiff and Class Members of the Data Breach.

170.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered or will suffer concrete injury, including, but not limited to: (a) actual identity theft; (b) the loss of the opportunity to determine how and when their PII is used; (c) the unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing of their PII; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as it fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII in its continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, and

repair the impact of the PII compromised as a direct and traceable result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

171.    As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**COUNT VI**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(On Behalf of Plaintiff and the Class)**

172.    Plaintiff re-alleges and incorporates by reference paragraphs 1 to 112 of the Complaint as if fully set forth herein.

173.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

174.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff and Class Members continue to suffer injuries as result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

175.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following: (a) Defendant owes a legal duty

CLASS ACTION COMPLAINT

to secure PII and to timely notify impacted individuals of a data breach under the common law, Section 5 of the FTCA, and various state statutes, and (b) Defendant continues to breach this legal duty by failing to employ reasonable measures to secure PII in its possession.

176.    This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect PII in Defendant's possession and control.

177.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff and Class members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

178.    The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

179.    Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and Class members whose confidential information would be further compromised.

CLASS ACTION COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

A.    An Order certifying this action as a class action and appointing Plaintiff as the Class Representative;

B.    A mandatory injunction directing Defendant to adequately safeguard the PII of Plaintiff and the Class hereinafter by implementing improved security procedures and measures, including but not limited to an Order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring Defendant to delete and purge the PII of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' PII;

    v.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks,

46

CLASS ACTION COMPLAINT

penetration tests, and audits on Defendant's systems on a periodic basis;

vi.    prohibiting Defendant from maintaining Plaintiff's and Class Members'
PII on a cloud-based database until proper safeguards and processes are
implemented;

vii.    requiring Defendant to segment data by creating firewalls and access
controls so that, if one area of Defendant's network is compromised,
hackers cannot gain access to other portions of Defendant's systems;

viii.    requiring Defendant to conduct regular database scanning and securing
checks;

ix.    requiring Defendant to monitor ingress and egress of all network traffic;

x.    requiring Defendant to establish an information security training program
that includes at least annual information security training for all employees,
with additional training to be provided as appropriate based upon the
employees' respective responsibilities with handling PII, as well as
protecting the PII of Plaintiff and Class Members;

xi.    requiring Defendant to implement a system of tests to assess their
respective employees' knowledge of the education programs discussed
in the preceding subparagraphs, as well as randomly and periodically
testing employees' compliance with Defendant's policies, programs, and
systems for protecting personal identifying information;

xii.    requiring Defendant to implement, maintain, review, and revise as
necessary a threat management program to appropriately monitor

CLASS ACTION COMPLAINT

Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested, and updated; and

xiii.  requiring Defendant to meaningfully educate all Class Members about the threats that they face because of the loss of its confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

C.  A mandatory injunction requiring that Defendant provide notice to each member of the Class relating to the full nature and extent of the Data Breach and the disclosure of PII to unauthorized persons;

D.  Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.  An award of damages, including actual, nominal, consequential damages, and punitive, as allowed by law in an amount to be determined;

F.  An award of attorneys' fees, costs, and litigation expenses, as allowed by law;

G.  An award of pre- and post-judgment interest, costs, attorneys' fees, expenses, and interest as permitted by law;

H.  Granting the Plaintiff and the Class leave to amend this Complaint to conform to the evidence produced at trial;

I.  For all other Orders, findings, and determinations identified and sought in this Complaint; and

J.  Such other and further relief as this court may deem just and proper.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: July 31, 2025                    Respectfully Submitted,


                                        */s/   Michael F. Ram*
                                        MORGAN & MORGAN
                                        COMPLEX LITIGATION GROUP
                                        Michael F. Ram (SBN 104805)
                                        mram@forthepeople.com
                                        711 Van Ness Avenue, Suite 500
                                        San Francisco, CA 94102
                                        Telephone: (415) 358-6913
                                        Facsimile: (415) 358-6293

                                        JOHN A. YANCHUNIS*
                                        jyanchunis@forthepeople.com
                                        RONALD PODOLNY*
                                        ronald.podolny@forthepeople.com
                                        ANTONIO ARZOLA, JR.*
                                        ararzola@forthepeople.com
                                        **MORGAN & MORGAN**
                                        **COMPLEX LITIGATION GROUP**
                                        201 N. Franklin Street, 7th Floor
                                        Tampa, Florida 33602
                                        Phone: (813) 275-5272
                                        Fax: (813) 222-4736

**Pro hac vice forthcoming.*

***Counsel for Plaintiff and the Class***

CLASS ACTION COMPLAINT